**WESTERN UNION TELEGRAPH CO. v. CARVER et al. (No. 6380.)**

(Court of Civil Appeals of Texas. San Antonio. May 12, 1920. Rehearing Denied June 2, 1920.)

1. **Telegraphs and telephones ⊙—37(8)—Diligence in delivery required, though addressee is not at address given.**

Where death message was directed to address where telegraph company's agent was informed the addressee did not live, being resident, however, in the vicinity, it was duty of company, not only to seek to deliver telegram at address, but, when it ascertained addressee was not there, to make at least some effort to ascertain her whereabouts by making due inquiry, failing of which a finding of negligence would be justified.

2. **Telegraphs and telephones ⊙—66(4)—Evidence held to show delivery of message to telegraph company's agent.**

In an action against a telegraph company for failure to deliver a death message, evidence held to show message was delivered to the company's agent, and not merely to agent of a railroad.

3. **Telegraphs and telephones ⊙—68(3)—Damages for physical pain and mental anguish recoverable for failure to deliver death message.**

In action against telegraph company for failure to deliver a death message, plaintiff addressee could recover damages arising both from physical pain and mental anguish, which were in contemplation of parties when message announcing dying condition of addressee's mother was sent.

4. **Appeal and error ⊙—1050(1)—Admission of conclusion of witnesses harmless to defendant.**

In action against telegraph company for failure to deliver death message, in absence of any evidence to show person to whose address message was sent was agent of addressee for any purpose, if it was a conclusion for both him and addresser to swear he was not her agent, such conclusion was harmless to defendant company.

5. **Telegraphs and telephones ⊙—71 — $1,500 for nondelivery of death message not excessive.**

Verdict for $1,500 recovered by daughter against a telegraph company for failure to deliver message announcing dying condition of her mother, whereby she was prevented from attending funeral, held not excessive.

Appeal from District Court, Bastrop County; R. J. Alexander, Judge.

⊙—For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

222 SOUTHWESTERN REPORTER (Tex.

Suit oy Nellie Carver and another against the Western Union Telegraph Company. From a judgment for plaintiffs, defendant appeals. Affirmed.

Francis R. Stark, of New York City, and Brooks, Hart & Woodward, of Austin, for appellant.

S. L. Staples, of Smithville, and Maynard & Maynard, of Bastrop, for appellees.

FLY, C. J. This suit was instituted and prosecuted to a judgment for $1,500 against appellant by Nellie Carver, joined by her husband, H. A. Carver. The basis of the complaint against appellant was negligence in failing to deliver a telegram, directed to Mrs. Carver at Houston, Tex., from her brother at Temple, Tex., informing her that her mother was dying in Temple. The cause was submitted to a jury on special issues, and on the responses thereto judgment was rendered in favor of appellees for the sum hereinbefore indicated.

The facts show that about 10:30 o'clock on the morning of January 31, 1918, in Temple, Tex., the following message, with the required toll for transmitting the same, was delivered to the agent of appellant:

"Mrs. Nellie Carver, 3711 Engelke Street, Houston, Texas. Come home. Mama is dying. Your bro., Paul Trammell."

At the time that the message was delivered, Paul Trammell, the sender, told the agent of appellant that Mrs. Carver did not live at 3711 Engelke street, but lived near that point, which was the address nearest to where she lived that could be given him. He accepted the message for transmission. The mother of Mrs. Carver died about 1 o'clock p. m. on January 31, 1918, and was buried at 4 p. m. on February 1, 1918. In compliance with a request, contained in a letter which she received on the morning of February 1, Mrs. Carver left on the first train for Temple, where she arrived about 2 o'clock a. m. about 10 hours after the burial of her mother. She did not know that a telegram had been sent to her until she reached Temple. The telegram was placed in the hands of a messenger about 2:55 p. m. of January 31, and was carried by him to 3711 Engelke street, which was a drug store owned by J. R. Clark, who refused the telegram, telling the boy that he did not know Mrs. Carver and did not know where she lived. The messenger boy left, and returned probably on February 1, 1918, and upon his insisting that Clark receive the telegram the latter did so. It was several days afterwards before it was delivered to some one who asked for it. The boy made no inquiries as to where Mrs. Carver lived, nor made any effort to find her, although the agent at Temple had been informed that she lived near the number placed on the telegram, and, in fact, she lived within 2½ blocks of the drug store. If the telegram had been deliver-

ed at any time on the afternoon or evening of January 31, Mrs. Carver could have reached Temple in time to have attended her mother's funeral. She suffered great mental anguish on account of not being present at her mother's funeral, which she would have attended, had the telegram been promptly delivered. The evidence fails to show that Clark had any authority to receive telegrams for Mrs. Carver, and appellant had no information to that effect.

[1] The first, second, third, fourth, and fifth assignments of error question the sufficiency of the evidence to sustain the verdict and are overruled. Although the message was directed to 3711 Engelke street, it was the duty of appellant not only to seek to deliver it there, but when it ascertained that Mrs. Carver was not there, to make at least some effort to ascertain her whereabouts, by making due inquiry, and, failing to do so, a jury would be justified in finding that it was guilty of negligence. The message conveyed information of the gravest and most important character to Mrs. Carver, and yet no effort whatever was made to locate her or ascertain her place of residence, although appellant had been informed that she did not live at the address, but lived near there. As said by the Supreme Court in Telegraph Co. v. Mitchell, 91 Tex. 454, 44 S. W. 274, 40 L. R. A. 209, 66 Am. St. Rep. 906:

"The duty which the telegraph company owes to the addressee is personal, and cannot be discharged by making inquiry for the person to whose care the message may be sent, nor by applying to the place of business or residence of the addressee; but inquiry must be made for the person addressed, if the circumstances are such as to show that he may probably be found away from such place of business or residence. The place to which a message is sent is but a guide for the messenger, and does not determine the measure of his diligence."

Clark was not the agent of Mrs. Carver in receiving telegrams, and what others may have done in connection with telegrams could not affect her. Appellant was informed, when the message was delivered to it by Trammell, that she did not live at the address given, but near it. Appellant could not have acted on the custom to deliver messages at the drug store, because there is no testimony indicating that it had any knowledge of such custom. When Clark told appellant that he did not know Mrs. Carver and refused the message, it was put on notice that Mrs. Carver had not instructed Clark to act as her agent, and yet no effort was made to locate her. The number given was a guide for the messenger, and, with the additional information that the addressee lived in the vicinity, was sufficient upon which to base a finding of negligence, if no effort was made to find her. Klopf v. W. U. Telegraph Co., 100 Tex. 540, 101 S. W. 1072; W. U. Tel. Co. v. Houghton, 82 Tex. 561, 17 S. W. 846, 15 L. R. A. 129, 27 Am. St. Rep.

918; Postal Telegraph Co. v. Prewitt, 199 S. W. 316.

[2] It is the claim of appellant that there was no testimony that the message was delivered to its agent, but that it was delivered to the agent of the Missouri, Kansas & Texas Railway Company. Trammell not only swore that the person to whom he delivered the message was the agent of the railway company, but also of appellant. It is singular, in view of the admission in the answer, that the message was delivered to it by Trammell and that it transmitted it and sent it to the street number indicated, that such a contention should be made. The contention is utterly without merit.

[3] The sixth, seventh, eighth, and ninth assignments of error complain of charges permitting the recovery of damages arising from both physical pain and mental anguish. The charges were fully authorized by Texas decisions, whatever may be the rule in inferior federal courts and inferior courts of New York and Indiana. Western Union Telegraph Co. v. Cooper, 71 Tex. 507, 9 S. W. 598, 1 L. R. A. 728, 10 Am. St. Rep. 772, and cases cited; W. U. Telegraph Co. v. Finfrock, 191 S. W. 181. The authorities cited do not sustain the contentions of appellant. Both mental and physical suffering were the natural result from conduct causing a daughter to be absent from the funeral of her mother, and such damages must have been in contemplation of the parties when the message was sent.

The tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, and seventeenth assignments of error are overruled. The message was not delivered to any one until the next day after it was sent, and then was delivered to a person not authorized to receive it, and appellant knew that it had no such authority. So far as the matter contained in the requested issues were raised by the facts, they were clearly submitted by the court and in the special charge requested by appellant and given.

[4] There was not one particle of testimony to show that J. R. Clark was the agent of Mrs. Carver for any purpose, and if it was a conclusion for both Mrs. Carver and Clark to swear that he was not her agent, such conclusion could not have damaged appellant. It would seem reasonable however, that it would be permissible for a witness who did not know a certain person, and never held any communication with him or authorized any one else to do so, to state that he was not her agent. Under the facts the court would have been justified in instructing the jury that Mrs. Carver had never authorized Clark to receive telegrams for her. The eighteenth, nineteenth, twentieth, and twenty-first assignments of error are overruled.

Appellant admitted that the message was delivered to it by Trammell, and objections to Trammell stating that he had delivered the message to its agent, are trivial and without merit. Appellant not only admitted that the message was delivered to it, but that it had transmitted it with diligence and had sought to deliver it. The twenty-second, twenty-third, twenty-fourth, and twenty-fifth assignments of error are overruled.

The twenty-sixth assignment of error is overruled.

[5] The verdict is not excessive.

The judgment is affirmed.